UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SAMUEL SANSOM on behalf of Mary Ann
Sansom, deceased,

     Plaintiff,

v.                                  Case No:   2:17-cv-142-FtM-38MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**REPORT AND RECOMMENDATION**[1]

Before the Court is the Complaint (Doc. 1) filed on March 9, 2017.  Plaintiff Samuel

Sansom, on behalf of Mary Ann Sansom, deceased, seeks judicial review of the final decision of

the Commissioner of the Social Security Administration ("SSA") denying Claimant's claim for a

period of disability and disability insurance benefits.[2]  The Commissioner filed the Transcript of

the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and

the parties filed a joint legal memorandum in support of their positions.  For the reasons set out

herein, the Court respectfully recommends that the decision of the Commissioner be

**AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

_____

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.
[2] For ease of reference, the Court will refer to Samuel Sansom as "Plaintiff" and Mary Ann Sansom as "Claimant."

I.      **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

   A.      **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

   B.      **Procedural History**

On October 18, 2010, Claimant filed an application for a period of disability and disability insurance benefits asserting an onset date of August 1, 2008.  (*Id.* at 116, 170-72).[3] The Social Security Administration granted Claimant's application initially on April 14, 2011, finding Plaintiff disabled as of October 1, 2010.  (*Id.* at 116, 134).  On November 3, 2011, the Social Security Administration issued a reconsideration decision affirming its initial decision. (*Id.* at 131, 135).  On January 11, 2012, Claimant requested a hearing before an administrative law judge asserting that she had been totally and permanently disabled since March 15, 2008. (*Id.* at 141).  A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on May 30, 2014.  (*Id.* at 75-115).  The ALJ issued an unfavorable decision on September 25, 2015.

---

[3]  At some later point, the alleged onset date became March 15, 2008, which is the date the ALJ used throughout his decision.  (Tr. at 25).

(*Id.* at 23-32).  The ALJ found Claimant not to be under a disability from the alleged onset date of March 15, 2008, through September 30, 2010.  (*Id.* at 25).

On January 13, 2017, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-5).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on March 9, 2017.  This case is ripe for review.

### A.    Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[4]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Claimant met the insured status requirements through December 31, 2013.  (Tr. at 25).  At step one of the sequential evaluation, the ALJ found that from the alleged onset date of March 15, 2008 through September 30, 2010, Claimant had not engaged in

---

[4]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

substantial gainful activity.  (*Id.*).  At step two, the ALJ found that from the alleged onset date of March 15, 2008 through September 30, 2010, Claimant suffered from the following severe impairment:  affective disorder.  (*Id.*).  At step three, the ALJ determined that from the alleged onset date of March 15, 2008 through September 30, 2010, Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (*Id.*).  At step four, the ALJ determined the following:

> [F]rom the alleged onset date of March 15, 2008, through September 30, 2010, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  The claimant was able to understand, remember and carry out simple instructions.

(*Id.* at 27).  The ALJ determined that from the alleged onset date of March 15, 2008 through September 30, 2010, Claimant was not capable of performing any past relevant work as a director, recreation center; a caseworker, child welfare; a recreation aide; a program aide; and a substance abuse counselor.  (*Id.* at 30).  After considering Claimant's age, education, work experience, and RFC, the ALJ found that from the alleged onset date of March 15, 2008 through September 30, 2010, there were jobs that existed in significant numbers in the national economy that Claimant could have performed.  (*Id.* at 31).  The ALJ found that Claimant could have performed the requirements of the following representative occupations:  (1) surveillance system monitor, DOT # 379.367-010, sedentary, unskilled, SVP 2 with reasoning level of 3; (2) inspector hand packager, DOT # 559.687-074, light, unskilled work, SVP 2 with reasoning level 2; and (3) box bender, DOT # 641.687-0710, medium, unskilled, SVP 1.  (*Id.* at 31).  The ALJ concluded that Claimant was not under a disability from the alleged onset date of March 15, 2008 through September 30, 2010.  (*Id.* at 32).

**B.      Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.    Analysis**

On appeal, Plaintiff raises three (3) issues. As stated by Plaintiff, they are:

(1)     ALJ Evans violated the Plaintiff's due process rights by failing to permit the Plaintiff's attorney to cross-examine the VE regarding the job numbers and inconsistencies between the VE testimony and the DOT.

(2)     ALJ Evans failed to consider and weigh the opinion of [Claimant's] psychiatrist, Omar Rieche, M.D.

(3)     ALJ Evans' decision was legally insufficient and unsupported by substantial evidence because he failed to include the social limitations determined by the State agency psychologist, Dr. Clark, in spite of giving Dr. Clark's opinion great weight.

(4)     ALJ Evans failed to evaluate [Claimant's] high sensitivity to noises.

(Doc. 19 at 6, 16, 22, 27).  The Court addresses each issue in turn.

### A.     Whether the ALJ Violated Plaintiff's Due Process Rights by Failing to Permit Cross-Examination of the VE

Plaintiff asserts that the ALJ prevented Plaintiff's counsel from completing his cross-examination of the vocational expert at the hearing regarding two separate issues.  First, Plaintiff argues that the ALJ stopped Plaintiff's counsel from cross-examining the vocational expert regarding how the vocational expert arrived at his job numbers.  (Doc. 19 at 8-9).  Second, Plaintiff argues that the ALJ prevented Plaintiff's counsel from completing his cross-examination of the vocational expert regarding the reasoning levels of the jobs the vocational expert testified that a hypothetical individual was capable of performing.  (*Id.* at 9-12).  Plaintiff claims that the ALJ violated his due process rights by not allowing counsel to complete his cross-examination.  (*Id.* at 12).  The Commissioner argues in response that the ALJ provided Plaintiff with a full and fair hearing, including the opportunity to cross-exam the vocational expert.  (*Id.* at 13).

In completing the five-step sequential process, the ALJ has a duty to develop a full and fair record, whether the claimant is represented by counsel or not.  *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 741 (11th Cir. 2015) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  Nevertheless, the claimant bears the burden of proving that he is disabled and, accordingly, is responsible for producing evidence to support his claim.  *Id.*  Moreover, remand is required only when:

"[T]he record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 2015).  In other words, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id.*  Prejudice requires a showing that "the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

*Id.* at 742.  The Court addresses both issues raised by Plaintiff regarding cross-examination of the vocational expert.

> **1.     Number of Jobs**

Plaintiff argues that the ALJ violated his due process rights by failing to allow Plaintiff's counsel the opportunity to fully explore the source of the vocational expert's job numbers.  The exchange concerning job numbers is as follows:

| ALJ: | Would you please identify any other jobs that exist in, well, three categories of jobs that exist in significant numbers in the state and national economy that would fit within the hypothetical just set forth, hypothetical #1? |
|---|---|
| VE: | Okay.  I have a surveillance system monitor; 379.367-010, it's sedentary with an SVP of 2, and I'll get you the statistics on this.  We have 96,260 engaged in this type of work in the national economy, and you want Florida or the local MSA? |
| ALJ: | Florida. |
| VE: | 6,390.  Did you want the second one in the sedentary or do you want me to go to other exertional? |
| ALJ: | You could do it light, please. |
| VE: | Okay.  I have an inspector and hand-packager; 559.687-074, light duty, SVP 2.  And I'll get the numbers on this one.  In Florida 13,440, in the national economy 471,750.  Were you able to hear that? |
| ALJ: | Yes. |
| VE: | Sorry about the ringing. |
| ALJ: | That's quite all right.  If you have a medium, I would appreciate that as well. |
| VE: | Okay.  I have box bender. |
| ALJ: | Box bender? |
| VE: | Box bender. |
| ALJ: | Okay. |

| | |
|---|---|
| VE: | 641.687-010, it's medium duty with an SVP of 1. In the national economy we have 206,600, in the Florida economy 6,170. |
| ALJ: | Mr. Barrett, are the responses that you have given to the hypothetical presented to you, are those responses consistent with the DOT, or are they inconsistent? |
| VE: | No, all of the references were through the DOT. I did use the Bureau of Labor Statistics for the data, which uses a cross walk from the DOT to their occupational code. Also, when we discussed the one occupation of the recreation aide, I supplied knowledge of the occupation in the real world. |
| ALJ: | Okay. All right, Mr. Sexton, any questions, please go right ahead. |
| ATTY: | Yes. . . . |
| ATTY: | Mr. Barrett, you stated the Bureau of Labor Statistics has a cross-walk from the DOT to the Occupational Codes? |
| VE: | That's correct. |
| ATTY: | How does that work? How does a cross-walk work? |
| ALJ: | No, we're not going to do that. |
| ATTY: | Well, if cross-walk doesn't have a common sense understanding, Your Honor. |
| ALJ: | You know, well, then you're going to have to study that. He's not going to go through with that here today. |
| ATTY: | Well, I object to the numbers then, if I'm not allowed to ask him questions about how they're derived. |
| ALJ: | Your objections so noted. |

(Tr. at 105-107; 112).[5]

Plaintiff argues that the ALJ did not allow counsel to inquire as to the term "cross-walk" or inquire further into how the vocational expert derived the job numbers. (Doc. 19 at 7-8). In addition, Plaintiff relied on SkillTran to argue that the vocational expert's job numbers were incorrect. (*Id.* at 7-9). The Commissioner argues that the ALJ may rely on a vocational expert's testimony as to job numbers, especially when the vocational expert relies on a resource such as the Bureau of Labor Statistics. (*Id.* at 13-14). The Commissioner also argues that even if the Court considered the SkillTran job numbers, these numbers constitute a significant number of jobs in the national economy. (*Id.* at 14).

---

[5] For clarity, the Court modified the transcript excerpt herein to indicate the person questioning, speaking, or testifying.

Plaintiff cites to a *Lynch v. Astrue*, 358 F. App'x 83 (11th Cir. 2009) for the proposition that an ALJ must allow cross-examination of the vocational expert as to job numbers or else the testimony contains "an undue degree of speculation" and does not constitute substantial evidence.  (Doc. 19 at 7).  In *Lynch*, the plaintiff appealed the district court's affirmance of the Commissioner's denial of disability insurance benefits and supplemental security income. *Lynch*, 358 F. App'x at 84.  The Eleventh Circuit reversed and remanded the action to the Commissioner, finding the Commissioner's decision not supported by substantial evidence.  *Id.* at 88.  The plaintiff claimed that the administrative law judge erred by not allowing the plaintiff's attorney the opportunity to cross-examination the vocational expert on the job numbers.  *Id.* at 87.  The vocational expert testified, "that her calculations were not mathematical, and that she used her best judgment of the employers who employ this type of worker, the people for this occupation, the size of MARTA, the size of Hartsfield/Jackson Airport:  'And that was the basis of my reducing the overall number down to approximately 1,000.  In my opinion, if one actually studied, and called, and checked, 1,000 would be very conservative.'"  *Id.*  When the plaintiff's attorney probed further, the ALJ restrained counsel from asking any further questions on the job numbers for this representative occupation as well as another.  *Id.* at 87-88.  The Eleventh Circuit held that the "mere stipulation to the VE's qualifications" does not preclude a claimant from questioning the basis for the VE's professional opinion and judgment.  *Id.* at 88.  Furthermore, the Eleventh Circuit held that it would have been helpful to allow the vocational expert to articulate the basis for her conclusions as to the job numbers.  *Id.*

Unlike *Lynch*, the testimony of the vocational expert as to job numbers was not confusing in the instant case.  The vocational expert testified here that he used data from the Bureau of

Labor Statistics and that his testimony was consistent with the DOT.  (Tr. at 106-107).  Further, when a vocational expert testifies as to the source or sources of his estimates for jobs, a vocational expert is not required to "provide a comprehensive statistical explanation of how he arrived" at the number of jobs in the national economy that a plaintiff is able to perform.  *See Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402 (11th Cir. 2012); *see also Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (after vocational expert testifies that she based her opinion on census figures, state information, labor market surveys, and job analyses, she was not required to provide detailed reports or statistics and the ALJ is permitted to rely on her opinion).  Here, the vocational expert testified that his source for the data was the Bureau of Labor Statistics, which is a reliable and sufficient source.  (*See* Tr. at 106-107); *see* 20 C.F.R. § 404.1566(d) ("[W]e will take administrative notice of reliable job information available from various governmental and other publications."); *see also Irvin v. Comm'r of Soc. Sec.*, No. 8:15-CV-1582-T-JSS, 2017 WL 928739, at *4 (M.D. Fla. Mar. 9, 2017).  Thus, the Court finds that the ALJ did not err in limiting cross-examination of the vocational expert.

Plaintiff also argues that the vocational expert's job numbers were inaccurate and Plaintiff claims that by using SkillTran, it is clear that there is a combined total of only 6,466 jobs in the national economy for all of the representative occupations listed by the vocational expert.  (Doc. 19 at 8).  Even using SkillTran, the combined number of jobs is sufficient.  *See Irvin*, 2017 WL 928739, at *5 (citing *Atha v. Comm'r, Soc. Sec. Admin.*, 616 Fed. App'x 931, 934–35 (11th Cir. 2015); *Brooks v. Barnhart*, 133 Fed. App'x 669, 671 (11th Cir. 2005) ("The ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy is supported by substantial evidence.").

Accordingly, the Court finds that the ALJ did not err in limiting cross-examination of the vocational expert and did not err in relying on the vocational expert's testimony as to the number of representational jobs in the national economy that Claimant was capable of performing. Further, Plaintiff did not demonstrate any prejudice.  Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence as to the number of representative jobs in the national economy that Plaintiff is able to perform.

### 2.       Reasoning Level

Plaintiff also argues that the ALJ erred in not allowing Plaintiff's counsel to cross-examine the vocational expert as to the inconsistency between the vocational expert's testimony and the DOT.  (Doc. 19 at 9).  Plaintiff claims that by not being able to cross-examine the vocational expert more fully, Plaintiff's counsel was unable to develop the record regarding the inconsistences in the vocational expert's understanding of "simple" instructions.  (*Id.* at 11).  Plaintiff argues that jobs with reasoning level of 1 are consistent with jobs limited to simple, routine, repetitive tasks and higher reasoning levels are not.  (*Id.* at 11-12).  Thus, in this case, Plaintiff claims that the ALJ erred in relying on the vocational expert who testified that some of the representative jobs had a reasoning level higher than one.  The Commissioner responds that at least one job identified by the vocational expert had a reasoning level of 1 and, further, the SVP for the other jobs is a 2, which is defined as "unskilled work," which is in turn defined as work involving understanding, remembering, and carrying out simple instructions and making simple work-related decisions.  (*Id.* at 14-15 (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996))).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform.  *Winschel v. Comm'r of*

*Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

The exchange between the attorney and the vocational expert concerning the reasoning levels is as follows:

| | |
|---|---|
| VE: | Simple instruction is defined through the SVP, the training requirement. . . . |
| ATTNY: | Right, SVP gives you the amount of time it's expected to take to learn the job. The reasoning level would discuss the actual complexity of the tasks that are involved, correct? |
| VE: | It does, well, you can look at it that way, yes. But typically, you're going to find that reasoning level to be lower. |
| ATTY: | Well, the reasoning level -- |
| VE: | Because, you know, when you have a job that requires minimal training, it's going to have minimal demand. |
| ATTY: | Is it true that the DOT defines a reasoning level of 2 as paring out detailed but uninvolved written or oral instructions? |
| VE: | Say that again? |
| ATTY: | Is it true that a reasoning level of 2 as defined by the Dictionary of Occupational Titles is carrying out detailed but uninvolved written or oral instructions? |
| ALJ: | Rather, what does, if you have the DOT in front of you, what is the DOT for, you said the reasoning level of 2? |
| ATTY: | Yes. What is it defined as? |
| ALJ: | What is the reasoning level of 2? How is it defined by the DOT? |
| VE: | Well, that's a separate listing, so I'm going to have to open my DOT. Let's see what we have here. Reasoning level is at 3. . . . |

| | |
|---|---|
| ATTY: | For cashier? |
| VE: | For a cashier. |
| ATTY: | What is it for -- |
| VE: | A 2 is anything beyond short demonstration up to and including one month. |
| ATTY: | That's the SVP? |
| VE: | That's the SVP.  And your reasoning development as a 3 is applied common sense and understanding to carry out instructions furnished in written, oral or diagrammatic form, deal with problems involving several concrete variables in and from standardized situations.  And I would say that's the description of simple. |
| ATTY: | Okay, and what is the reasoning level for the other three jobs you provided? |
| VE: | Okay.  Now, I looked those up and I don't have those numbers in front of me, so I'm going to ask if you would give me the first number, I will look it up for you. |
| ATTY: | 379.367-010. |
| VE: | 379, what was that? |
| ATTY: | .367-010. |
| VE: | All right.  Okay, this also has a reasoning level of 3. |
| ATTY: | Okay, and the inspector hand-packager?  I don't have that DOT Code. |
| ALJ: | I think that's 559.687-074. |
| VE: | Okay.  That has the reasoning level of 2. . . . |
| ATTY: | Okay.  And what is reasoning level of 2 defined as? |
| VE: | Okay, apply common sense and understanding to carry out detailed but uninvolved written or oral instruction, deal with problems involving a few concrete variables in or from standardized situations. |
| ATTY: | Wouldn't you say that detailed is inconsistent with simple? |
| VE: | I wouldn't necessarily say that detailed is.  I mean, if you're talking about a few details, such as because the training involves demonstration, place these items in this box in this manner, and a demonstration would be detailed. |
| ATTY: | Okay, so that -- |
| VE: | And we're dealing with somebody with a Bachelor's degree and we're looking for, I would gather, jobs that would be within her attention span -- |
| ATTY: | Well, that's not -- |
| VE: | -- not in terms of whether she's lost intelligence. |
| ATTY: | That's not my questions, though.  The question is -- |
| ALJ: | Mr. Sexton, the vocational expert has addressed your question regarding whether something is detailed or not.  He's given the examples, such as placing something in a box.  Whatever the example is on the record, that was clearly given.  And he has stated that that is a form of detail.  Otherwise, it's not details as in some |

|       |                                                                                                             |
|-------|-------------------------------------------------------------------------------------------------------------|
|       | schematic drawings by an architect or something.  But he has given an example of detail.  Okay, so --      |
| ATTY: | Well, I believe --                                                                                          |
| ALJ:  | Wait, wait, let's move on from there.  That's enough on that.  You got another question that's going to, the last one is a box bender. . . . |
| ATTY: | Yeah, what's the reasoning level on that?                                                                   |
| ALJ:  | He's given a SVP of 1, so the reasoning level is going to be presumably lower.  The same or lower. . . .   |
| ALJ:  | Is that reasonable to conclude?                                                                             |
| VE:   | Yes.                                                                                                        |
| ALJ:  | Okay.                                                                                                        |
| VE:   | Absolutely.                                                                                                  |
| ALJ:  | All right.  Well, what's your --                                                                            |
| ATTY: | Well, what is it?                                                                                            |
| ALJ:  | No.  What's the next, you got some other question that's really relevant?  That you can deduce yourself.   |
| ATTY: | It is relevant, Your Honor.                                                                                  |
| ALJ:  | Well --                                                                                                      |
| ATTY: | What's the reasoning level –                                                                                 |
| ALJ:  | No.                                                                                                          |
| ATTY: | -- for box bender?                                                                                          |
| ALJ:  | We'll finish with that.                                                                                      |
| ATTY: | Well, I'm going to object.                                                                                   |
| ALJ:  | Well, that's fine, you object.  He has given you --                                                         |
| ATTY: | I'm objecting to all that testimony.                                                                         |
| ALJ:  | Well, you are more than welcome to object to that.                                                          |
| ATTY: | Regarding the reasoning levels.                                                                              |
| ALJ:  | He's given you an SVP of 1, which is lower than the 2 SVP's, and those prior two SVP's were 2.  And you can reasonably deduce that it's lower for yourself without going to the number.  You got any other questions? |

(Tr. at 108-111).[6]

The Court finds that substantial evidence supports the ALJ's decision because the ALJ

properly relied on the VE's testimony to determine that Claimant could have performed a

significant number of jobs in the national economy.  In this case, the ALJ limited Claimant to

_____

[6] For clarity, the Court modified the transcript excerpt herein to indicate the person questioning, speaking, or testifying.

jobs where she "was able to understand, remember[,] and carry out simple instructions." (Tr. at 27). The ALJ included these limitations in the hypothetical to the vocational expert. (*Id.* at 105). With these limitations, the vocational expert found – and the ALJ adopted – that a person with Claimant's limitations was capable of performing representative jobs such as a surveillance system monitor, inspector hand packager, and box bender. (*Id.* at 31). Further, the ALJ specifically asked the vocational expert if his responses were consistent with the DOT, and the vocational expert testified that "all of the references were through the DOT." (*Id.* at 106).

Plaintiff asserts that the ALJ erred in foreclosing counsel's cross-examination of the vocational expert regarding the reasoning levels of the representative jobs. (Doc. 19 at 9). In this case, the ALJ allowed Plaintiff's counsel to cross-examine the vocational expert to the extent that the vocational expert testified as to the reasoning levels of the jobs at issue, including a reasoning level of 3 for the surveillance system monitor, a reasoning level of 2 for the inspector hand-packager, and a reasoning level of 1 or less for the box bender job. (Tr. at 109-11). Further, the vocational expert testified that "[s]imple instruction is defined through the SVP, the training requirement," implying that it is the SVP level that determines the instructional level. (Tr. at 108). Additionally, the vocational expert testified a reasoning level of 2 is not necessarily inconsistent with a limitation to understand, remember, and carry out simple instructions and that "we're dealing with somebody with a Bachelor's degree and we're looking for, I would gather, jobs that would be within her attention span --." (*Id.*). Thus, the vocational expert testified that an individual with Plaintiff's limitations would be able to perform these representative jobs.

Moreover, even though Plaintiff argues that a limitation to understanding, remembering, and carrying out simple instructions conflicts with a reasoning level of 2 or 3, "[m]ost courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not

inconsistent with the ability to perform only simple tasks." *See Hurtado v. Astrue*, No. 09–60930–CIV, 2010 WL 1850261, at \*11 (S.D. Fla. Apr. 14, 2010), *report and recommendation adopted*, No. 09-60930-CIV, 2010 WL 1850242 (S.D. Fla. May 7, 2010), *aff'd sub nom. Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793 (11th Cir. 2011) (citing *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) (concluding no remand was required where VE identified reasoning level 3 jobs for a plaintiff who could do only simple, routine, and repetitive work)).  In addition, in the instant case, the vocational expert testified that the representative job of box bender has an SVP of 1 and a reasoning level of 1 or lower.  (*See* Tr. at 111).  Thus, even if the ALJ erred in relying on the testimony of the vocational expert as to other representative jobs because their reasoning levels were 2 or 3, the error was harmless because at least one representative position was at a reasoning level of 1 or lower.

The Court finds that the ALJ did not err in limiting Plaintiff's counsel's cross-examination of the vocational expert as to the reasoning level of the representative jobs listed by the vocational expert that an individual with Claimant's limitations was capable of performing.  Further, Plaintiff did not demonstrate any prejudice.  Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence as to the representative jobs in the national economy that Claimant was able to perform.

### B.      Whether the ALJ Erred in the Consideration and Weight Afforded to Omar Rieche, M.D.

Plaintiff argues that the ALJ's failure to consider Omar Rieche, M.D.'s opinion is legal error.  (Doc. 19 at 16).  The Commissioner asserts that the ALJ articulated good reasons supported by substantial evidence for assigning little weight to Dr. Rieche's opinion.  (*Id.* at 22).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."

*Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citations omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Additionally, the opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit has concluded that good cause exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*[7]

In this case, Dr. Rieche completed two (2) Psychiatric Review Technique forms dated January 20, 2012, indicating that he treated or examined Claimant on December 27, 2011.  (Tr. at 384-86).  In the first form, he found Claimant to meet Listing 12.04 by finding Claimant had depressive syndrome that included anhedonia, appetite disturbance, sleep disturbance, decreased

---

[7]  After Plaintiff filed her application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.  *See, e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016).  The Court applies the rules and regulations in effect at the time of the ALJ's decision because the regulations do not specify otherwise.  *See Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 521 (11th Cir. 2017).

energy, or feelings of guilt or worthlessness. (*Id.* at 384). Further, Dr. Rieche found Claimant to have marked restrictions in daily living, or social functioning, or maintaining concentration, persistence, or pace. (*Id.*). Dr. Rieche also found that Claimant's condition existed since March 15, 2008. (*Id.* at 385). In the second form, Dr. Rieche found Claimant did not meet Listing 12.06, but did find that Claimant had marked limitations in daily living and social functioning. (*Id.* at 386). Again, Dr. Rieche found Claimant's condition existed since March 15, 2008. (*Id.*).

In the decision, the ALJ erroneously believed that another physician, Claimant's treating physician, Chanun Park, D.O. completed these forms. (*Id.* at 29). Specifically, the ALJ stated:

> The undersigned has considered the opinion of Dr. Park wherein he opined that the claimant met medical listings 12.04 and 12.06 since March 15, 2008 and has accorded these opinions with little weight. The opinions are not supported by the medical evidence as a whole including mental status examinations found within the record and Dr. Park's own treating records of the claimant, which indicate that she reported improvement with prescribed medication. Furthermore, this is an area outside the expertise of Dr. Park as he is not a licensed mental health professional.

(*Id.* at 29).

It is uncontested that the ALJ attributed these Psychiatric Review forms to Dr. Park and not Dr. Rieche; noted that Dr. Park was not a licensed mental health professional; and misread the forms to indicate the Claimant met Listings 12.04 and 12.06, when Dr. Rieche found Claimant only met Listing 12.04 and not Listing 12.06. (Doc. 19 at 16, 17, 19; Tr. at 29). However, a remand is not warranted when an ALJ commits harmless error. *Pichette v. Barnhart*, 185 F. App'x 855, 856 (11th Cir. 2006). To determine if these errors are harmless, the Court will overlook these errors and focus on the other reasons the ALJ afforded little weight to these opinions. The ALJ afforded little weight to these opinions because they are not supported by the medical record as a whole and Dr. Park's treating records. (Tr. at 29).

Plaintiff does not demonstrate that the medical records as a whole support Dr. Rieche's opinion. (*See* Doc. 19 at 16-18).  Further, Plaintiff does not cite to any medical records from Dr. Rieche that support the opinions found in his Psychiatric Review forms.  (*See id.*).  In fact, the Court finds that the record does not contain any other medical records from Dr. Rieche, including his treatment or examination notes from December 27, 2011.  (*See* Tr. at 384).  Thus, the Court cannot determine whether Dr. Rieche is a treating physician, nor can the Court determine whether his opinion is consistent with his own medical records.  *Phillips*, 357 F.3d at 1241.

Here, even though the ALJ erroneously attributed Dr. Rieche's opinions to Dr. Park, the ALJ supported his decision to afford those opinions little weight, asserting that they were not supported by the medical evidence as a whole.  (*See* Tr. at 29).  Further, Plaintiff failed to meet his burden to show that Dr. Rieche was entitled to deference as a treating physician or that his opinions were supported by substantial evidence of record, including his own treatment notes. The Court finds that even if the ALJ erred as to the identity of the author of these reports and as to one of the reports meeting a Listing, the error was harmless because the reports are not supported by any treatment notes and the relationship between Claimant and Dr. Rieche is unknown.

### C.    Whether the ALJ Erred in Failing to Include Dr. Clark's Social Limitations

Plaintiff asserts that the ALJ erred by not including a limitation in Claimant's RFC and in the hypothetical question to the vocational expert regarding limitations on Claimant's ability to interact with co-workers.  (Doc. 19 at 23).  Plaintiff claims that the ALJ afforded great weight to the state agency psychologist, Thomas L. Clark, Ph.D., who opined that Claimant had moderate limitations in the ability to get along with coworkers or peers without distracting them or

exhibiting behavior extremes.  (*Id.* (citing Tr. at 362)).  The Commissioner argues that the ALJ properly considered the weight afforded the state agency psychologist, state agency consultants are not entitled to deference, the ALJ is not required to adopt Dr. Clark's entire opinion, and Dr. Clark's opinion contained conflicting language concerning Claimant's ability to interact with co-workers.  (*Id.* at 24-26).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work.  *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The RFC is the most a plaintiff is able to do despite her physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  In determining whether a plaintiff can return to her past relevant work, the ALJ must determine a plaintiff's RFC using all of the relevant medical and other evidence in the record.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004); 20 C.F.R. § 404.1520(e).  Even though examining doctors' opinions are not entitled to deference, an ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

The Court will focus on Dr. Clark's opinion regarding any limitations as to Claimant's social functioning.  Dr. Clark completed a Psychiatric Review Technique form on April 8, 2011.  (Tr. at 347-59).  Regarding Claimant's social limitations, Dr. Clark found Claimant had mild difficulties in maintaining social functioning.  (*Id.* at 357).  Dr. Clark explained that Claimant

"[c]an relate effectively with others, being limited mainly in primary relationships.  See MRFC."

(*Id.* at 359).  Dr. Clark also completed a Mental Residual Functional Capacity Assessment on the

same date, April 8, 2011.  (*Id.* at 361-64).  Regarding social interaction, Dr. Clark found

Claimant not significantly limited in all areas, except the ability to get along with co-workers or

peers without distracting them or exhibiting behavioral extremes.  (*Id.* at 362).  In this one area,

Dr. Clark found Claimant moderately limited.  (*Id.*).  Dr. Clark explained:

> Relates effectively with public and prospective co-workers.
> Can cooperate on simple, routine tasks and transactions.
> Can accept directions and feedback in general.
> Problems mainly in primary relationships (family, other close relationships).
> Less active socially, but able to relate appropriately in spite of some mood depression.
> May show limited tolerance for frequent, recurrent contact with the general public.

(*Id.* at 363).

> When considering Dr. Clark's opinion, the ALJ stated:

> [He] has considered the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment of State agency psychological consultant, Thomas L. Clark, Ph. D, wherein he opined that the claimant can understand, retain, and carry out simple instructions.  The undersigned has accorded great weight to the opinion as it is supported by and consistent with the medical evidence as a whole.

(*Id.* at 29).

The Court finds that Dr. Clark's findings as to Claimant's social limitations are not as

clear-cut as Plaintiff indicates.  Dr. Clark's Psychiatric Review Technique form and his Mental

Residual Functional Capacity Assessment forms contain conflicting language concerning

Claimant's abilities.  In the Psychiatric Review Technique form, Dr. Clark checked the box that

Claimant has only mild difficulties in maintaining social functioning and concluded that

Claimant can relate effectively with others, but is limited in her primary relationships.  (*Id.* at

357, 359).  In Dr. Clark's Mental Residual Functional Capacity Assessment form, Dr. Clark

checked the box that Claimant was moderately limited in getting along with coworkers without distracting them or exhibiting behavioral extremes, but expanded on this by stating – although not entirely clear – that Claimant could relate effectively with public and prospective co-workers, can cooperate, can accept directions and feedback, but may show limited tolerance for frequent, recurrent contact with the general public.  (*Id.* at 363).  Dr. Clark emphasized that Claimant's main problems are in her primarily relationship with family and other close relationships.  (*Id.*).

Here, the ALJ clearly considered both of Dr. Clark's opinions in the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment.  (Tr. at 29).  Although in one form Dr. Clark checked moderate limitations in social functioning, in another form he checked mild limitations.  (*Id.* at 357, 362).  Further, in these forms, Dr. Clark explained that Claimant could relate effectively with the public and with coworkers, but had limitations relating to her close familial and other relationships.  (*See* Tr. at 363).  Thus, the Court finds that the ALJ did not err in failing to include in Claimant's RFC or in the hypothetical to the vocational expert that Claimant had limitations as to social functioning as it relates to Claimant's ability to interact with co-workers.  A comprehensive reading of all of Dr. Clark's opinions does not support such a limitation.  Accordingly, the Court finds that substantial evidence supports the ALJ's decision not to include a limitation as to Claimant's ability to interact with co-workers.

### D.     Whether the ALJ Erred in Plaintiff's RFC by Not Including a Limitation as to Sensitivity to Noises

Plaintiff argues that the ALJ erred by not including any limitation as to exposure to loud noises in Claimant's RFC.  (Doc. 19 at 28-29).  Plaintiff claims that the representative jobs of box bender and hand packager require exposure to loud noises.  (*Id.* at 30).  The Commissioner contends that the only relevant evidence as to Claimant's sensitivity to loud noises comes from her husband and no medical records from the relevant time period support Claimant's alleged

sensitivity.  (*Id.* at 30).  Further, the Commissioner asserts that even if the ALJ erred, at least one representative job does not require exposure to loud noise and, therefore, any error is harmless. (*Id.* at 31).

An ALJ must state with specificity the weight accorded each item of evidence.  *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006).  The testimony of family members constitutes evidence.  *Id.*  Thus, here the ALJ must consider and weigh Claimant's husband's testimony and reports.

Plaintiff cites to reports from Claimant, reports from Claimant's husband, and Claimant's husband's testimony at the hearing to support Plaintiff's claim that Claimant had sensitivity to noise and that the ALJ should have included this sensitivity in the RFC.  (*Id.* at 28-29 (citing Tr. at 87, 88, 91-92, 223, 224, 226, 228, 230, 231, 337, 342, 344)).  Although Plaintiff cites to these lay reports and testimony, Plaintiff does not cite to any medical evidence to support Plaintiff's subjective complaints concerning sensitivity to noise.  Further, the ALJ considered Claimant's husband's Adult Function Report, and afforded it little weight as being unsupported by the medical record as a whole, and for being primarily based on Claimant's subjective complaints. (*Id.* at 29).  Further, even if the ALJ erred by not including a limitations for sensitivity to noise in the RFC, the error was harmless because one representative occupation, surveillance system monitor, does not require expose to loud noises.  *See Pichette*, 185 F. App'x at 856 (11th Cir. 2006).

Accordingly, the Court finds that substantial evidence supports the ALJ's decision not to include a sensitivity to noise in Plaintiff's RFC.

III.     Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

**IT IS RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).

Respectfully recommended in Chambers in Ft. Myers, Florida on May 23, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties